## Lyon's Estate

*John C. Ingham*, for exceptant.

*Joseph W. Beaman*, for claimant.

CULVER, P. J., February 7, 1941.—In this case Ruth M. Lyon was appointed administratrix of D. Nettie Lyon, deceased, gave a statutory notice in the manner required, and, after paying all charges against the estate which were brought to her notice, distributed the balance of the estate to the collateral heirs of decedent, and filed her final account.

Claimant, M. B. Loomis, held a judgment against decedent in the Court of Common Pleas of Bradford County, but had no knowledge of the death of decedent or of the appointment of Ruth M. Lyon as administratrix as aforesaid, and consequently did not give the administratrix notice of his claim within six months, as required by the act of assembly.

However, before the final account was confirmed by the court, said claimant learned of the death of decedent and immediately orally presented his claim to the administratrix and demanded payment. The administratrix, taking the position that no notice of such claim was given her within six months after the granting of letters

of administration to her and notice thereof by publication, and she having made distribution of all the estate in her hands, refused to pay the same. Claimant filed exceptions to the final account and an auditor was appointed to dispose of the exceptions. For some unknown reason the auditor failed to file his report for nearly three years, then sustained the exceptions, and allowed the claim of claimant, together with interest to September 28, 1937.

Counsel for exceptant relies on section 49(b) of the Fiduciaries Act of June 7, 1917, P. L. 447, 20 PS §862, which reads as follows:

"Executors or administrators may make distribution and pay or deliver legacies, without the audit of their accounts, upon such security as may be satisfactory to them, nevertheless at their own risk, but without liability to any creditors of the decedent who shall not have given written notice to the executor or administrator within six months after the granting of letters testamentary or of administration, provided that such executor or administrator has complied with the provisions of section ten of this act. Where distribution of a decedent's estate is awarded by the orphans' court, after audit and confirmation of any account of the executors or administrators, such decree of distribution shall protect the executors or administrators from personal liability with respect to the property so distributed. In making distribution under such a decree the executors or administrators shall not be entitled to demand refunding bonds from the distributees, except in the cases specially provided for by this act, and in other cases in which the court shall direct the giving of refunding bonds";

contending that under this act exceptant (who was the accountant administratrix) could legally distribute the estate among the heirs before filing an account or having an adjudication of her administration, and that, as she so did, she is not liable to any creditor of decedent who did not give written notice to exceptant within six months after the granting of letters of administration

and giving of the notice by publication in the newspapers according to section 10 of the same act. Counsel for exceptant has filed a brief contending that the section is divided into two parts, the first part relating to distribution among heirs and legatees, and the second part relating to distribution among creditors, and contends that as to the first part the filing of an account and adjudication is unnecessary to relieve her from claims of creditors who did not give notice of their claims within the six months, etc. In other words, if we understand the contention, it is that if the creditor in this case were an heir instead of a creditor he would have standing, but as a creditor he has none. We cannot so interpret this act of assembly.

In accountant's brief we find the following:

"The exceptant claims to rest its contention on the Ivison case in 101 Pa. Superior Ct. 326. We have no quarrel with that case. It illustrates just what we have been and are now contending for. In the Ivison case it was a distribution among heirs or legatees, and it thus made necessary all the provisions of such a distribution. But in our case here it is a distribution among creditors that is complained of. It brings it within the express terms of 'but without liability to any creditor'. . . There is nothing here that requires an account. . . . The only requirement to be shown is that the creditor failed to notify the administrator of his claim within six months after the granting of letters, and the published notice of the administrator."

Claimant's counsel also cites two county court cases. The first is Peters' Estate, 20 D. & C. 1. We do not consider this case authority on the question we are considering. It is true that Judge Sinkler at the conclusion of the opinion giving the reasons for the opinion stated:

"Upon these grounds our conclusions are based". He then added as a gratuity:

"We comment also upon the apparently mistaken interpretation by counsel for petitioner of section 49 (b) of the

Fiduciaries Act of 1917. 'Distribution', as used therein, means payment of legacies in case of testacy, and to those entitled to payment under the inheritance laws in case of intestacy. It does not include payment of decedent's debts, as is argued."

Just what Judge Sinkler meant is not clear. As we interpret it, he meant that if an administrator consumes the estate in the payment of debts presented within the six months' time after giving notice, he would not be liable to a creditor who presented a debt thereafter. However, in Peters' Estate the administrator c. t. a. filed his account, it was audited, exceptions were filed and subsequently withdrawn on April 13, 1933. On December 20, 1933, a decree for citation was entered sur petition of Robert W. McCarter, a surety, etc., asking that the adjudication be opened upon the ground that counsel had been remiss in duty, etc. That is quite a different case from the one we are considering.

Counsel also cites the case of Harmon et al. v. Everhardt, 22 D. & C. 56, decided by Judge Stewart of Northampton County in 1934. This case we consider is not authority for the instant case. In that case letters were issued to the executrix August 10, 1931, and she immediately inserted the statutory notice for six consecutive weeks beginning August 14, 1931. She administered the estate and filed her account as executrix August 4, 1932. The said account was *confirmed finally* September 27, 1932, and Judge Stewart after reciting these facts said:

"Sarah J. Everhardt has completed her duties as executrix, and distribution of all funds in her hands has been made."

On April 6, 1933, more than six months after the *adjudication* of the account had become final, the death of O. A. Everhardt was suggested and a sci. fa. in an action instituted against her decedent in his lifetime issued to proceed against her as executrix, and all this without notice of the claim having been given her within six months from the granting of letters testamentary or at any time

before her account was filed and the adjudication became final. Judge Stewart held that the sci. fa. must be dismissed for the above reasons, saying, "The words, 'but without liability to any creditors of the decedent', etc., mean something. They mean just what they say. The executor is exempted from liability provided he has complied with the law."

There can be no doubt of the correctness of this statement, and had the accountant in the instant case complied with the law, filed her account, and had it adjudicated before the claimant presented his claim, she would have been protected; but this she did not do. She administered the estate by paying the debts, taxes, and necessary costs, and distributed the balance of $432 among the collateral heirs without having complied with the law by filing an account and having the adjudication made before so doing. Judge Stewart further said:

"There are two cases which seem to us to rule the present case. One is Ivison's Estate, 101 Pa. Superior Ct. 326, . . . The other case is Mack's Estate, 111 Pa. Superior Ct. 20."

The Ivison case, as we interpret it, is almost identical with the instant case. In that case letters of administration were granted March 5, 1928, and due notice given to the public by advertisement for six consecutive weeks in the proper newspapers as provided by law. The entire estate consisted of two life insurance policies in the sum of $3,000. No notice was given by the Citizens Savings & Trust Company of York of its judgment against decedent, and no claim was made on accountant within six months after giving notice of her being qualified as administratrix.

The first notice was given October 17, 1928, more than six months after the granting of letters of administration, and prior to this time, the administratrix had no knowledge of the claim. Between May 15, 1928, and October 17, 1928, the accountant, who was the sole heir at law, drew out for her own use the entire residue of the

estate remaining after payment of the inheritance tax so that when she received knowledge of the claim she had already disbursed the entire estate. In other words, she had distributed the remainder of the estate after payment of inheritance tax, costs, etc., to herself as the sole heir of decedent.

In the instant case the accountant paid the costs of administration, taxes, and debts and distributed the balance of the estate, which amounted to considerably more than claimant's judgment, among the heirs of decedent without first having her account adjudicated by the orphans' court. These two cases seem to us identical in principle and we are convinced the instant case is ruled by the Ivison case, but our interpretation of the ruling in the Ivison case does not coincide with the interpretation contended for in exceptant's brief.

The other case mentioned by Judge Stewart is Mack's Estate, 111 Pa. Superior Ct. 20, and differs from the Ivison case in that in the Mack's Estate case the administrator, after qualifying and giving the notice required by the statute, made an accounting to the court, which accounting and schedule of distribution was approved by the court April 7, 1932, and on April 23, 1932, the balance so awarded by the schedule of distribution was paid, and the award duly satisfied. On April 21, 1933, nearly a year thereafter, appellant presented its petition asking that the adjudication be opened and reviewed, in order that it might present a claim against the decedent's estate for $1,250. The court held that, inasmuch as testatrix had fully complied with the law and her administration had been finally adjudicated by the court and the estate distributed by the court more than a year before appellant presented its claim, it was too late. That is not the instant case. In the Ivison case, supra, the Superior Court said:

"It will be noticed that section 49 (b) allows executors and administrators to make distribution without the audit of their *accounts*, without liability to creditors who

have not given written notice within six months. It implies that necessarily an account is filed. . . . The account, according to the section, must precede the distribution. It does not contemplate that the administratrix, as in this case, should take possession of the estate and use it as her own before any account is filed."

And again on page 330, the court said:

"There is no doubt that the proper compliance with the law on the part of a creditor requires him to present his claim within six months, but if he presents it later, before distribution, no harm is done. The law is but an act of limitation, intended to protect the administrator after he has distributed the fund in the *time* and *manner prescribed* by *law*. When this accountant converted the estate and reduced the assets to her own possession it was not a distribution according to law."

The section of the act of assembly in question has been passed upon by the Supreme Court several times and nowhere do we find anything justifying the distinction claimed by exceptant.

In Free's Estate, 327 Pa. 362, 368, the court said:

"Fiduciaries who pay out funds in their hands without an audit of their accounts do so at their own risk. In White's Estate, 322 Pa. 85, 90, we said: 'Only by proceeding in accordance with the statute may a fiduciary make distribution of the assets in his hands without liability to himself. While distribution without an audit is permitted (section 49b), the act specifically provides that such distribution shall be at the fiduciary's "own risk." Having assumed the risk appellant must be held responsible for all payments made without the approval of the orphans' court' ".

In Powell's Estate, 35 D. & C. 699, the facts are in principle identical, as we construe them, with the instant case. In that case, discussing section 49 (*b*) of the Fiduciaries Act, Judge Ladner said:

"Judging from several cases before us there seems to be some confusion in the minds of the members of the

bar as to the meaning of the words italicized but, when considered in connection with the practice generally prevailing in the counties having no separate orphans' court, the purpose of the clause becomes plain. We understand in such counties the practice is for the fiduciaries to file their accounts and unless exceptions are filed they are confirmed as a matter of course, and distribution is then made without an audit. If exceptions or objections are filed, the account is referred to an auditor appointed by the court. Obviously section 49(b) is meant to confirm this practice.

"Accordingly, in Ivison's Estate, 101 Pa. Superior Ct. 326, 329, Judge Trexler says:

" 'It will be noticed that section 49b allows executors and administrators to make distribution without the audit of their *accounts*, without liability to creditors who have not given written notice within six months. It implies that necessarily an account is filed. It would hardly be a correct construction of this section to hold that when an accountant files his account a creditor even though he has given no notice, may not, before distribution, demand payment. The account, according to the section, must precede the distribution. It does not contemplate that the administratrix, as in this case, should take possession of the estate and use it as her own before any account is filed.' See also Glass' Estate, 115 Pa. Superior Ct. 448, and White's Estate, 322 Pa. 85.

"There having been no account filed by the accountants here before they distributed the balance of the estate to themselves, it follows they cannot plead this section in bar of an unpaid creditor's claim."

In the instant case, accountant paid the expenses of administration and all claims that were presented to her within six months and then voluntarily distributed the remainder among the collateral heirs of decedent. She then filed a final account setting forth such distribution. When the final account was advertised, claimant first learned of the death of decedent and immediately pre-

sented his claim and filed exceptions to the account. An auditor was appointed, and at the audit claimant proved his claim, and the same was allowed.

After giving careful consideration to exceptant's argument and brief, and an examination of the various cases cited, and many others, we are of opinion this case is ruled by Ivison's Estate, supra, and that the exceptions must be dismissed. As this controversy arose by reason of the failure of claimant to present his claim within six months from the granting of letters of administration and as accountant had paid out all funds in her hands, and will be personally liable for the payment of claimant's claim, we deem it but just and fair that interest thereon should be allowed only to the expiration of the six months' period after the insertion of notice in the newspaper of accountant having qualified as administratrix, and with this qualification the exceptions should be dismissed.

### Order

And now, to wit, February 7, 1941, after due consideration, the exceptions filed to the auditor's report are dismissed except insofar as the auditor allowed interest beyond the six months' period from granting of letters of administration. To that extent the exceptions are sustained. An exception is noted for exceptant and a bill sealed.